## NELMS v. THE STATE.

There was no error in charging, or in failing or refusing to charge. The court did not express or intimate an opinion as to what had or had not been proved. There was ample evidence to authorize the verdict, and there was no abuse of discretion in refusing a new trial.

Argued July 10, — Decided August 2, 1905.

Conviction of manslaughter. Before Judge Littlejohn. Webster superior court. May 27, 1905.

*G. P. Munro, J. J. Dunham,* and *S. R. Stevens,* for plaintiff in error. *F. A. Hooper, solicitor-general,* contra.

FISH, P. J. John Nelms, under indictment for murder, was found guilty of voluntary manslaughter. His motion for a new trial being overruled, he excepted.

1. Neither the evidence nor the prisoner's statement authorized a charge on the subject of involuntary manslaughter. Therefore the failure to instruct the jury on that subject was not error.

2. It was not cause for a new trial that the judge, before instructing the jury on the subject of flight, remarked in their presence, " Now one matter that my attention has been called to by the solicitor, that I overlooked in charging you." Such remark

did not tend to unduly emphasize the instructions on the subject of flight.

3. After charging the rule as to positive and negative testimony, it was not error for the court to instruct the jury that "the rule does not apply when two parties having equal facilities for seeing or hearing, if one swears that it did occur and the other that it did not." Civil Code, § 5165.

4. Error was assigned, in the motion for new trial, upon the refusal of a written request to give in charge the following: "The good character of one on trial for a crime, if satisfactorily proved, may of itself, in a case where guilt is not plainly established, be sufficient to generate in the minds of the jury a reasonable doubt of his guilt." And complaint was also made that the court instructed the jury that where good character of the accused is shown, such character may of itself "generate a doubt in the minds of the jury as to guilt of the accused. But while that is true, if the jury should be satisfied from the testimony, beyond a reasonable doubt, of the guilt of the accused," then the jury would be authorized to convict notwithstanding such proof of good character. The error assigned upon the charge was "that the court instructed the jury that good character might raise in their minds simply a doubt of the movant's guilt, and not a reasonable doubt which would authorize them, on proof of good character alone, to find movant not guilty." If there were any evidence tending to show the general character of the accused, it was the testimony of a witness who swore: "I have known John ever since he was a boy — nothing like grown. I know his general character pretty well. It is about as good as any negro I have ever known or had about me." For myself, I think it exceedingly doubtful if this evidence authorized a charge on the subject of the general good character of the accused. The legal signification of general character or reputation is not readily understood by laymen of average intelligence; and the testimony above quoted indicates to my mind that the witness was merely giving his individual opinion of the character of the accused, based upon his knowledge and acquaintance with him, and not the "community-reputation" of the accused. Moreover the witness did not swear to a positive knowledge of the general character of the accused. He said he knew it "pretty well." Nor did he state unqualifiedly that the general

character of the accused was good, but said that it was "about as good as any negro I have ever known or had about me." This may have been absolutely true, and yet the general character of the accused may not have been good. The adverb "pretty" means "in some degree; moderately; considerably; rather; . . . less emphatic than *very*; as, I am pretty sure of the fact." Webster's Dictionary. One of the meanings of the adverb "about" is "nearly; approximately; with close correspondence in quality; . . . degree; etc. Ib. So the testimony of the witness may be thus paraphrased : " I know the general character of the accused moderately or rather well. It is nearly or approximately as good as that of any negro I have ever known or had about me." Granting, however, that the testimony above referred to authorized an instruction as to the general character of the accused, we are of the opinion that the charge given by the court was substantially correct. See *Thornton* v. *State*, 107 *Ga.* 683, and cit. In *Stevenson* v. *State*, 83 *Ga.* 575, it was held that a charge as to good character of the accused, in its relation to reasonable doubt, less accurate than the charge on that subject in the present case, did not require a new trial. We are further of the opinion that the instructions sufficiently covered the request to charge. The charge could not have misled the jury into believing that the court meant that proof of good character of the accused would generate a mere doubt of his guilt which would not authorize his acquittal.

5. The court charged the jury that where the accused offers evidence for the purpose of establishing his character for peace, the jury should consider such evidence " in connection with the other testimony in the case, in passing upon the guilt or innocence of the defendant." Error was assigned upon this charge, because the court instructed the jury to consider the evidence of the character of the accused for peace in connection with the other evidence in the case, "and failed to instruct them that said testimony could be considered independent of the other testimony as to the question of movant's guilt or innocence, or as generating a reasonable doubt. in the mind of the jury as to the movant's guilt or innocence." The charge as given was correct. Proof that the accused bore a good character for peaceableness should have been considered by the jury, not by itself alone, but in con-

nection with all other pertinent evidence tending to establish his guilt or innocence. See *Brazil* v. *State*, 117 *Ga.* 32. As has been frequently ruled, an instruction correct in itself is not rendered erroneous by a failure to charge some other appropriate instruction.

6. Nor did the court err in refusing a written request to give a charge defining a reasonable doubt as "such a doubt as a juror would hesitate to act on in the most important business affairs of his own in the ordinary walks of life." It is stated in 23 Am. & Eng. Enc. L. 955, that "there have been many attempts to define and interpret the term 'reasonable doubt,' . . but it is apprehended that such attempts are futile; that the words are of plain and unmistakable meaning; and that any definition on the part of the court tends only to confuse the jury and to render uncertain an expression which, standing alone, is certain and intelligible." In *Battle* v. *State*, 103 *Ga.* 53, Mr. Justice Little, after citing a number of cases, says: "It would seem, therefore, to be a conclusion that the phrase 'reasonable doubt' explains itself. Certainly the meaning is obvious, and will be readily appreciated by the average juror without further explanation." The definition given in the request above quoted was certainly not accurate, as it leaves the jury to infer that any doubt which might cause any juror to hesitate to act in the most important business affairs of his own would be such a doubt as would justify the acquittal of the accused. The request, if given, would have tended only to confuse the jury and to make the term "reasonable doubt" uncertain and less intelligible. The court, in its charge, several times instructed the jury that before they would be authorized to convict the accused, the evidence must satisfy their minds and consciences beyond all reasonable doubt of his guilt.

7. Complaint was made that the judge erred in remarking, in the presence of the jury and during the examination of a witness by counsel for the accused: "I do not think there is any issue raised in the case, whether he [meaning the defendant, John Nelms] shot at William Dorsey again, on either the part of the State or the defendant's witnesses. I haven't heard any testimony on the question; it's taking up time on a question that is not in the case; if it is in issue, it has not developed so far; the State's

witnesses said that John did not shoot but once." The error assigned was that the court, in such remark, expressed an opinion, in the presence of the jury, as to what or what had not been proved in the case. It is obvious that there is no merit in this assignment of error.

8. The court did not err in ruling out, at the instance of the solicitor-general, evidence of the self-serving declaration of the accused, though it was given in evidence by a witness while being examined by the solicitor. Considering the evidence and the statement of the accused, the jury were authorized to render one of three verdicts : for murder, for voluntary manslaughter, or not guilty ; and the court did not err in so instructing them. The evidence authorized the verdict, and the court did not err in refusing to grant a trial.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*