## JACKSON *v.* THE STATE.

1. There was evidence from which the jury might infer that the killing was without premeditation, upon a sudden impulse of passion, aroused not alone by words but also by an attempted indecent exposure of the person of the deceased in the presence of defendant's wife, and by the commission upon the defendant of an assault by the deceased; and an

appropriate instruction on the law of voluntary manslaughter should have been given to the jury.

2. The cause of the separation of the deceased from his wife was irrelevant to any issue in the case, and evidence relating thereto was properly excluded.

3. The words "reasonable doubt" are of such obvious significance that an omission to define them, in the absence of an appropriate written request, will not require a new trial.

Submitted April 19,—Decided May 12, 1909.

Indictment for murder. Before Judge Worrill. Terrell superior court. February 22, 1909.

*M. C. Edwards,* for plaintiff in error. *John C. Hart, attorney-general, J. A. Laing, solicitor-general,* and *R. R. Arnold,* contra.

Evans, P. J. Henry Jackson was convicted of the murder of Henry Shine, and recommended to mercy. The court refused him a new trial, and he excepts.

1. Several of the exceptions go to the point that the court erred in instructing the jury that the defendant was either guilty of murder or not guilty, and in failing to give an appropriate charge on the law of voluntary manslaughter. The defendant and the deceased had married sisters. About two months prior to the homicide the wife of the deceased separated from him, and had since resided with the defendant and his wife. The defendant lived in a house containing three rooms. The front of the house had two rooms separated by a hall five or six feet wide. The homicide occurred in the hall of the house, between eight and ten o'clock at night. The only persons in the house at the time of the homicide were the defendant and the deceased, and their wives. The wife of the defendant was incompetent to testify, and the wife of the deceased gave substantially this account of the tragedy: About eight o'clock at night the deceased came to the house of the defendant and requested permission to spend the night with the witness. She declined the request, and the deceased said that he was going to stay anyway, and commenced stripping off his clothes in the presence of herself, her sister, and the defendant. Whereupon the defendant said, "Don't be undressing here before my wife, you go on home;" to which the deceased replied that "he didn't give a God damn, he was going to stay all night." The defendant then said, "You go on home. I don't want you here undressing before my wife that way," and the deceased pulled up his pants and said,

"By God, he was going to stay all night." The defendant got his gun and commanded the deceased to leave the house. At this stage of the colloquy the witness says she apprehended a difficulty and jumped behind the bed. She heard the defendant say, "Don't come on me cutting at me, I will shoot you," and about that time the gun fired and the witness ran from the house. The witness did not see any knife in her husband's hands, nor did she see an open knife on the floor near his hand. The next morning an open knife was picked up from the floor under the hand of the deceased before the body of the deceased had been removed. There was a conflict in the evidence as to whether this knife belonged to the defendant or the deceased. An unopened knife belonging to the deceased was taken from his pocket after his death. We think this testimony demanded a charge on the law of voluntary manslaughter. The jury could infer from it that the killing was without premeditation, upon a sudden violent impulse of passion, aroused not alone by words but also by an attempted exhibition of the person of the deceased in the presence of the defendant's wife, and by the commission upon the defendant of an assault by the deceased. It is true that the wife of the deceased did not testify that she saw the deceased make a knife thrust at the defendant, but she did say that while hiding behind the bed she heard the defendant warn the deceased not to cut him, simultaneously with the discharge of the gun. An open knife was found by the body of the deceased. The defendant's contention was that it was the knife with which the deceased assaulted him; the State contended under the evidence that the open knife belonged to the defendant, and was placed by the body of the deceased, after death, by the defendant to give color to the claim of self-defense. The solution of these contentions could only be made by the jury. We think the jury might infer that an assault was made by the deceased upon the defendant with a knife. If the intent of the deceased in making the assault was not to commit a felony, but only a serious personal injury, such as a stabbing, and the defendant killed under the impulse of passion because of such attempt, the homicide would be voluntary manslaughter. *Rumsey* v. *State,* 126 *Ga.* 423 (55 S. E. 167) ; *Jenkins* v. *State,* 123 *Ga.* 523 (51 S. E. 598) ; *Gann* v. *State,* 30 *Ga.* 67.

2. Counsel for the defendant propounded the following question on cross-examination to the wife of the deceased, a witness for the State: "Why did you separate from him?" (the deceased). The answer would have been, "I couldn't get along with him; he beat me and fought me all the time." The court excluded the answer. It is insisted that this testimony was admissible as tending to show that the defendant had nothing to do with the separation or reconciliation of the deceased with his wife. There was nothing in the testimony which rendered this testimony relevant. There was no contention that the defendant was concerned either with the separation of the witness from her husband, or any effort at reconcilation of the estranged spouses. The rejected testimony was irrelevant.

3. It is complained that the court failed in his instructions to the jury to define a "reasonable doubt." It has been held, that, in the absence of a written request, it is not error for the judge to omit to define such words as "ordinary care," "extraordinary care and diligence," which have an obvious meaning. *Savannah Electric Co.* v. *Bennett*, 130 *Ga.* 597 (61 S. E. 529). For the same reason there is no error in failing to define the words "reasonable doubt," where a properly worded written request is not made. *Battle* v. *State*, 103 *Ga.* 53 (29 S. E. 491); *Nelms* v. *State*, 123 *Ga.* 575 (51 S. E. 588).

Except as indicated in the first division of this opinion, no error is made to appear.

*Judgment reversed. All the Justices concur.*