THURMOND *v.* THE STATE.

No. 14976. OCTOBER 7, 1944.

*Don Howe* and *Willis Smith,* for plaintiff in error.

*T. Grady Head, attorney-general, Hal C. Hutchens, solicitor-general, W. A. Foster Jr.,* and *Victor Davidson, assistant attorney-general,* contra.

JENKINS, Presiding Justice. 1. After having charged that the burden is on the State to show to the satisfaction of the jury beyond a reasonable doubt that the defendant was guilty as charged, before they would be authorized to convict him, and that the pre-

sumption of innocence remains with the defendant and prevails in the case in his favor until the State introduces evidence sufficient to satisfy the minds and consciences of the jurors beyond a reasonable doubt of his guilt, the court defined reasonable doubt as follows: "Those words have just their ordinary everyday meaning. Everybody understands what a reasonable doubt is. A reasonable doubt is an actual doubt that you are conscious of, after going over in your minds the entire case, giving consideration to all the evidence and every part of it, and the defendant's statement. If you then feel uncertain and not fully convinced that the defendant is guilty, and believe that you are acting in a reasonable manner, and if you believe that a reasonable man, in any matter of like importance, would hesitate to act because of such doubt as you are conscious of having, that is a reasonable doubt, of which defendant is entitled to have the benefit." This instruction is not subject to the criticisms, especially in the absence of any request to charge: (a) that the court should have gone further and stated that if the jury had a reasonable doubt of guilt the defendant should be acquitted; (b) that the court should have stated that a reasonable doubt is a doubt that grows out of the evidence or lack of evidence, a conflict in the evidence or the want of sufficient evidence to convict, and if they had such a doubt the defendant should be acquitted; (c) that such charge was not a correct statement or explanation of the law of reasonable doubt and was misleading and confusing to the jury. The charge would have been sufficient without any further explanation or definition of reasonable doubt (*Nash* v. *State*, 126 *Ga.* 549, 55 S. E. 405; *Battle* v. *State*, 103 *Ga.* 53 (2), 29 S. E. 491); and the court having instructed the jury in another portion of the charge that, if they had a reasonable doubt of the defendant's guilt on the charge of murder and on the charge of manslaughter, they should find the defendant not guilty, it was unnecessary to repeat, in connection with the definition of reasonable doubt, that, if the jury had a reasonable doubt of guilt, the defendant should be acquitted. While we do not think that the charge complained of in the instant case could have misled the jury, many of the attempts to elucidate the meaning of the words "reasonable doubt" present questions of difficulty, and we feel constrained to repeat the language of Mr. Justice Little in the *Battle* case, supra, in which he says: "There are no words

plainer than 'reasonable doubt,' and none so exact to the idea meant. Hence some judges, it would seem, wisely decline attempting to interpret them to the jury."

2. The Code, § 38-415, provides: "In all criminal trials, the prisoner shall have the right to make to the court and jury such statement in the case as he may deem proper in his defense. It shall not be under oath, and shall have such force only as the jury may think right to give it. They may believe it in preference to the sworn testimony in the case. The prisoner shall not be compelled to answer any question on cross-examination, should he think proper to decline to answer." The court gave the following instruction relative to the defendant's statement: "In all criminal cases . . the defendant has the right to make such statement to the court and to the jury as he sees proper in his own defense. Under the law of this State, the defendant is not sworn. He is not subject to examination or cross-examination, yet you have the right to believe his unsworn statement in preference to the sworn testimony in the case." In *Cargile* v. *State,* 137 *Ga.* 775 (2) (74 S. E. 621), this court said: "While it is true that a defendant in a criminal case electing to make a statement is not subject to cross-examination without his consent, yet as this provision of the statute is but a rule of trial procedure, it is the better practice to omit any reference to it in the general charge. Nevertheless, the statement of this rule of procedure in the general charge will not ordinarily be ground for a new trial." We cannot see how this charge, taken as a whole, could properly be taken as minimizing or discrediting the defendant's statement or as unduly emphasizing the fact that the defendant was not sworn, or as being an expression "of an opinion by the court that the defendant was not entitled to any credit by the jury and was unworthy of belief." It is never error, in the absence of a written request, to fail to give a charge in the language which the defendant contends would have been proper, when the correct principle of law was charged. *Adams* v. *State,* 168 *Ga.* 530 (7, 11) (148 S. E. 386); *Wilder* v. *State,* 148 *Ga.* 270 (2) (96 S. E. 325).

3. The following is part of the charge relative to malice: "Legal malice may not be ill-will or hatred. It is an unlawful intention to kill, without justification, excuse, or mitigation; which intention, however, must exist at the time of the killing as alleged.

But it is not necessary for that intention to exist for any length of time before the killing. In legal contemplation, a man may form the intention to unlawfully kill, do the killing instantly, and regret the deed as soon as it is done. In other words, murder is the intentional killing of a human being by the intentional use of a weapon that, in the manner it is used at the time, is a weapon likely to kill, and a killing without justification, excuse, or mitigation." Exception was taken to this excerpt on the ground that the court expressed and intimated an opinion that the defendant had malice, that he maliciously killed the deceased, and that malice existed in his mind at the time of the alleged killing; and that the court deprived the jury of the right to say, under the evidence and circumstances of the case, whether there was express or implied malice. Neither in the exception nor in the brief does the plaintiff in error point out what portion of this excerpt he contends expresses an opinion. The first sentence of the excerpt conforms to the statement approved in *Taylor* v. *State*, 105 *Ga.* 746 (31 S. E. 764). In that case the court held as follows: "The popular idea of malice in its sense of revenge, hatred, ill-will, has nothing to do with the subject (legal malice) ; it is an intent to kill a human being in a case when the law would neither justify nor in any degree excuse that intention, if a killing should take place as intended." The next two sentences of said excerpt are similar in effect to the charge approved in *Dennis* v. *State*, 146 *Ga.* 191 (91 S. E. 19), as follows: "A person may form the intention to kill, do it instantly, and regret it as soon as it is done," where the court had just defined express and implied malice and had instructed the jury that malice is an unlawful intention to kill without justification or mitigation. In *Buckhanon* v. *State*, 151 *Ga.* 827 (3) (108 S. E. 209), this court held that a charge defining express malice in the language of the Code is not an expression of an opinion. We find no error in the excerpt complained of.

4. The court gave the following instruction to the jury: "Any person charged with murder has a right to defend himself and show that he was justified, and this is known to the law as justifiable homicide. So justifiable homicide is the killing of a human being in self-defense, or against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on him, that is, the defendant. The term 'felony' as used in this connection

means an offense for which the offender, on conviction, would be subject either to the death penalty or to imprisonment in the penitentiary, and not otherwise. All other instances which stand upon the same footing of reason and justice as those enumerated shall be justifiable homicide. The bare fear of any of those offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears and not in a spirit of revenge." This excerpt is excepted to as being a misstatement of the law and as being confusing and misleading, as follows:

(a) "The portion of the charge, that any person charged with murder has a right to defend himself and show that he was justified, is misleading for the reason that he has a right to defend himself at the time of the alleged attack when the deceased was killed, and not at the trial of the case." If there could have been any misunderstanding as to the intention of this portion of the charge it was cured by the definition of justifiable homicide immediately thereafter, which made it clear that the killing of a human being in *self-defense* or against one who manifestly intends or endeavors, by *violence or surprise,* to commit a felony on him, was justifiable homicide. The jury could not have understood the court to mean that "self-defense" related to his defense at the trial nor that at the trial he was defending himself physically from a violent or surprise attack from someone intending to commit a felony upon him.

(b) The movant further says that this excerpt from the charge was erroneous as confusing the law of self-defense or voluntary manslaughter with the law of reasonable fear; and that, having *previously* charged in connection with voluntary manslaughter that provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder, the court should have gone further and instructed the jury that "they should not let that confuse their mind with the law of justification, acting under the fears of a reasonable, courageous man, that (if) his life was in danger or apparently so, he would be justified." There is no merit in these grounds of complaint. Here the charge was clearly limited to

justifiable homicide, in which the defendant was given the benefit of his right to defend against both actual peril and against what might, under the circumstances, appear to be so by one acting under the fear of a reasonable man. The law of voluntary manslaughter was stated in other and different portions of the charge.

5. The evidence not being limited to testimony circumstantial in its nature and character, the court did not err in referring in his charge both to direct and circumstantial evidence. Nor, since the jury was fully charged on their right to believe the defendant's statement in preference to the sworn testimony, was it reversible error not to include a reference to his statement in that portion of the charge here complained of.

6. There being testimony as to previous threats recently made by the defendant against the deceased, the court did not err in telling the jury that they might consider any such testimony, and if they should determine that any such threats were made, they might consider such a fact as illustrating the state of mind or feeling of the defendant against the deceased.

7. The court charged as follows: "On the question of express malice, and that is the reason why threats, if any were made, are admissible in evidence to illustrate, if they do, whether or not the defendant had malice in his mind at the time of the alleged killing. So, on the question of express malice, the court charges you that you may look to all the facts and circumstances and determine whether or not the defendant made threats against the life of the deceased, and whether or not he planned to carry those threats, if any, into execution in any manner when an opportunity presented itself, if one did, and then carried these threats, if any, into execution by killing the deceased in the manner as charged in the bill of indictment." We are unable to see that this excerpt was either "misleading" or "confusing," or that it "emphasized" the State's theory or "minimized" the defendant's contention, or that it amounted to an expression of opinion on the facts to which the charge related.

8. The court did not seek to coerce nor did it manifest any desire that the defendant be convicted in charging the jury this excerpt: "If you are not satisfied beyond a reasonable doubt, or if you have a reasonable doubt of the defendant's guilt on the charge of murder, and on the charge of voluntary manslaughter, the form

of your verdict would be, 'We the jury find the defendant not guilty;' and that would mean, of course, that he is not guilty of any crime in connection with the alleged transaction."

*Judgment affirmed. All the Justices concur.*