44533, 44534.   BOYLES v. THE STATE (two cases).

WHITMAN, Judge.   The appellant, Sylvester Boyles, was tried simultaneously for two offenses and was convicted and sentenced for both. The appeal in case 44533 is from the judgment of conviction and sentence for the offense of assault with intent to murder Donald Grizzle with a knife. The appeal in case 44534 is from the judgment of conviction and sentence for the offense of sodomy, the indictment reading that Boyles "did have carnal knowledge of and connection with Beatrice Boyd, against the order of nature, accused being a male person and the said Boyd being a female person, accused having accomplished said act of sodomy by inserting his male organ into the mouth of said Boyd. . ."

According to the evidence, Donald Grizzle was a friend of Beatrice Boyd and was spending the night with her in her apartment. Beatrice Boyd testified that at 2:10 a.m., from her bedroom, she heard knocking at her door and Donald Grizzle, who was at this time in the living room, came in the bedroom and asked her if she wanted him to open the door.

Donald testified that he went to the door to open it; that as he was unlatching the chain latch the door came on open and that's when he got stabbed; that "somebody came in, and stabbed me. . . I grabbed him as he stabbed me, and I slung him against the wall; and then I left to go get the police." He further testified that he did not get a look at the person that stabbed him "other than he had a white

shirt on"; that "I knew he had the knife, so I just left out; I ran to the Clermont Hotel, and I found a police officer on duty in there; he called for a squad car to come out, and they picked me up, and we went back over there."

Officer J. A. Tribble and Officer R. W. Whaley testified that they responded to a call to come to the Clermont Hotel and found Donald Grizzle with a stab wound in his abdomen and he informed them of the trouble; that they placed Grizzle in their car so he could point out the house because he seemed in a hurry and had heard his girl scream. Officer Tribble testified that he went up the front way and Officer Whaley testified that he went around back. Tribble stated that he heard some noise in a window and took his flashlight and put it in the window and saw that the defendant had Mrs. Boyd around the neck, she was completely nude, and he had a knife in his other hand. Tribble testified that he saw the defendant very clearly and he pointed him out from the witness stand at the trial. He further testified that when he shined his flashlight, she screamed "My God, help me" and cut his light off in hope that he would let her go and a few seconds later she screamed, "He's going out the back door"; that he ran to the front door; that Mrs. Boyd came running out the front door, in the nude, just as he went in; that he looked through the apartment and found the back door standing open and called to Officer Whaley and told him that he (Tribble) was coming down the back stairs. The back stairs led to a basement area. Both officers testified that they searched the basement area and found the defendant lying between the flooring of the house and the furnace pit.

Beatrice Boyd (Mrs. Boyd) testified that there was knocking on the door and Donald asked her if she wanted him to open the door, and she said yes, cautioning him to be careful because she did not know who it was; that she heard a noise which scared her; that she jumped up and put on her housecoat and went in the living room and saw a man getting up off the floor and he grabbed her and started choking her and slapped her a couple of times in the face; that he turned a lamp on to get what she thought was a knife; he had on a white shirt and a pair of blue jeans, and then he cut the light off, shut the back door and put the night latch back on the door and took her into the bedroom and took her clothes off her. She then testified that he put his hand into her female

organ and then put his male organ into her mouth, all against her will. She further testified that about this time she heard a noise and he heard it too and he grabbed her up off the bed and held her up in front of the window; that she screamed, the police officers shined a light in there on her and she told them that he had a knife; that he carried her into the kitchen and wanted to know if there was a back door, and she showed him and because of the small space of the door opening where it opens against the refrigerator, there was not room for them both to go out the door at the same time, and when he started out the door she was able to get away from him and she ran out the front door and told the police he had gone out the back and then she ran down to the police car. She testified that her assailant was Sylvester Boyles who lived in the adjacent apartment, that she had recognized him and she pointed him out from the witness stand as such.

Introduced and admitted into evidence was a knife which police officers testified they found at the corner of the furnace pit where the defendant was found "hiding." There was testimony that the knife was capable of causing the death of a person. Also introduced and admitted into evidence was a mattress cover which was identified as having been taken from the bed of Beatrice Boyd and which, according to the testimony of one Robert B. Finley, an employee of the Georgia Department of Public Safety Crime Laboratory, contained a wet stain and that his examination of this stain had revealed the presence of spermatozoa. Mrs. Boyd testified that she had spit a substance on the bed following the act of sodomy previously mentioned. Finley also testified that he found no blood stains on the knife.

In an unsworn statement, the defendant stated that he had been to a party and had drunk quite a bit; that he went upstairs to go to bed and got sick; that he went downstairs to the bathroom, throwing up, and heard a noise which sounded like it was unnderneath him in the basement; that he went downstairs into the basement and "it was two cats, up on a ledge"; that he went up to run the cats out and must have hit his head on a spot which had been weakened from a car wreck in 1962 and when he is hit there "I go blind and can't think straight"; that the next thing he knew there were two or three police officers there; that they grabbed him, threw

him on the concrete, handcuffed him, stomped him in the back and called him a "God damn rapist" and stated they ought to blow his brains out. He stated that he had on a white T-shirt and green pants cut the same as blue jeans.

Beatrice Boyd testified that her attacker had a stocking over his face, but she also testified that she could tell who it was through the stocking. *Held:*

1. In both cases the appellant contends that the trial court erred in refusing him the right to cross examine the State's witness, Beatrice Boyd, as to events that occurred one week prior to the date of the alleged crime.

The record shows that appellant asked her if she knew several named men and she answered yes. She was then asked if she had not had an argument with one of these men out on the front porch about a week or two weeks prior and she responded that she did not remember one. The question was pressed again and the State objected to the question and the court inquired as to how that would throw any light on the case and appellant's counsel responded that it could have been some other person that was responsible and not Sylvester Boyles. The trial judge responded that he would allow questions as to what had occurred here (evidently referring to the case on trial), but that he did not think the details of something that happened two weeks before would be of any benefit in the case, and he sustained the State's objection.

The appellant contends that Beatrice Boyd had admitted on direct and cross examination that she was only 19 years of age and had 5 current boy friends; that she had lived for two years without the benefit of a ceremonial marriage with a Mr. Boyd, and that on the night of the alleged acts of assault with intent to murder and sodomy, she had her boy friend, Donald Grizzle (one of the five) in her apartment and that he went to bed with her. The appellant urges that Beatrice Boyd's testimony taken in a light most favorable to her would still show that she led a promiscuous life and had many men in her young life; and that if the court had a discretion in the matter, it was abused in refusing appellant's attorney the right to a thorough and sifting cross examination about an argument she had had with someone on the front porch a week earlier.

In *Frady v. State,* 212 Ga. 84 (90 SE2d 664), upon which appellant heavily relies, a conviction for rape was reversed for the

trial court's refusal to permit the defendant to cross examine the complaining witness as to her relationships with other men, the court observing that the right of thorough and sifting cross examination as conferred by *Code* § 38-1705 is a substantial right the preservation of which is essential to a proper administration of justice, and extends to all matters within the knowledge of the witness, the disclosure of which is material to the controversy. It was particularly observed that with regard to rape cases, evidence tending to prove the previous unchaste character of the female is admissible for two purposes; one to discredit her as a witness, and the other to disprove the charge that the intercourse was forcible and against her consent. The opinion (Hn. 2) quotes Lord Hale's observation that "this accusation is easily made, hard to prove, and harder to be defended by the party accused, notwithstanding his innocence." And finally Justice Candler, writing for the majority, concludes: "No party to litigation is ever unfairly treated by a full disclosure of all relevant facts concerning the issue, and the rules of evidence have been framed to the prominent end that justice shall always prevail among litigants." Hn. 2.

In the case sub judice, the relationship of Beatrice Boyd with other men had been disclosed and admitted by her. And in our view it would have been the better practice to have allowed the further cross examination with regard to the "boyfriend argument" to which the question on cross examination alluded or assumed. But if, as appellant has argued, his purpose was to show that it *could* have been someone else who invaded the apartment and committed the offenses, evidence later developed shows no reversible error. This was not a case as with many rape cases where conviction depends or rests solely upon the testimony of a female who, after the fact, unseen by others, emerges with the cry of "rape." In this case, the evidence show an intrusion, stabbing, a dash for help, a quick response by police, and positive identification by a policeman of the defendant (whom he saw by the light of his flashlight shining through the bedroom window) holding the woman nude at knife point, quick pursuit, and apprehension of the defendant lying between the flooring of the building and the furnace pit in the basement at the foot of stairs of the apartment's back entrance. We find no reversible error in this enumeration.

2. In both cases it is contended that the trial court erred in failing to charge, without request, the defense of alibi. "Alibi, as a defense, involves the impossibility of the accused's presence at the scene of the offense at the time of its commission; and the range of the evidence, in respect to time and place, must be such as reasonably to exclude the possibility of presence." *Code* § 38-122. Neither appellant's unsworn statement nor the testimony of the one witness he called in his behalf excluded the possibility of his presence at the place where the offenses occurred at the time of the occurrence. One of the police officers testified he saw the defendant inside the apartment holding Beatrice Boyd nude at knife point. Both officers testified they found the defendant in the basement area beneath the apartment shortly after the offenses occurred. There was no error in not charging alibi. In *Tiller v. State*, 118 Ga. App. 590 (164 SE2d 915), wherein we held that it was harmful error, even in the absence of request, to fail to charge the law of alibi where this is the sole defense relied on, there was evidence in the case which tended to show the impossibility of the defendant's presence at the scene.

3. The next enumeration which is common to both cases is that the following charge was erroneous: "If, after considering all of the facts and circumstances of these cases—or any one of the cases, for that matter—giving the defendant's statement just such weight and credit as you think it is entitled to receive, your minds are wavering, unsettled and unsatisfied, then that is the doubt of the law, and you should acquit; but if that doubt does not exist in your minds as to the guilt of the defendant, then you should convict."

It is also contended, with regard to both cases, that it was error to charge the jury: "[I]f you believe beyond a reasonable doubt that this defendant is guilty of the offense . . . then in that event it would be your duty to convict him of that offense."

The appellant argues that these charges were tantamount to the direction of a verdict against the defendant, that they were argumentative and strongly urged the jury that it had no alternative but to return a verdict of guilty.

We do not find these excerpts from the charge erroneous for the reasons assigned. The excerpts favor neither the State nor the defendant when they are regarded with the entire charge, and we have reviewed it in its entirety.

4. Enumeration of error number 6 in appeal 44534 (sodomy) is that the court erred in failing to define "intent" and "penetration." Generally it is not error to omit the definition of particular terms in charging the jury absent a correct written request therefor. *Washington v. State,* 118 Ga. App. 729 (2) (165 SE2d 431); *Harris v. State,* 97 Ga. App. 495 (2) (103 SE2d 443); *Dobbs v. State,* 214 Ga. 206 (104 SE2d 121); *Jackson v. State,* 132 Ga. 570 (3) (64 SE 656). It does not appear that a jury of reasonable intelligence would have been unable to correctly apply the charge which was given to whatever facts they found from the evidence. There was no error.

5. Enumeration of error number 6 in appeal 44533 (assault with intent to murder) is that the court erred, even without request, in failing to charge the law applicable to the offense of stabbing. There was no error in view of the evidence in this case. If "it is manifest from the evidence that the real issue upon the trial is as to the *identity* of the offender . . . the accused, who denies any sort of participation in the alleged criminal act, and stands upon that defense alone, can not complain if the trial judge does not, of his own motion, suggest to the jury possible conclusions from the evidence, legally authorized, which may indeed tend to mitigate the penalty if the prisoner is guilty, but which are utterly incompatible with his innocence and wholly at variance with the defense presented by his plea of not guilty." (Emphasis supplied.) *Jones v. State,* 12 Ga. App. 133 (76 SE 1070).

"The indictment was for assault with intent to murder. Under the evidence the accused can not complain of an omission of the trial judge to instruct the jury that he might be convicted of the lesser offense of 'stabbing,' *for the charge of the court was more favorable to him than an instruction to that effect would have been,* in that the jury were instructed that *unless they were satisfied* that the assault was made *with the specific intent to kill,* the accused should be acquitted." (Emphasis supplied.) *Jones v. State,* 12 Ga. App. 133 (1), supra.

6. Enumerations of error numbered 7 and 8 in appeal 44533 (assault with intent to murder) are without merit.

7. The verdict in each case is authorized by the evidence.

*Judgments affirmed. Jordan, P. J., concurs. Hall, J., concurs in the judgments.*

ARGUED JUNE 4, 1969—DECIDED DECEMBER 4, 1969—
REHEARING DENIED DECEMBER 19, 1969.

*Stanley H. Nylen,* for appellant.
*Lewis R. Slaton, District Attorney, Tony H. Hight, Stanley
P. Herndon,* for appellee.