## RUMSEY v. THE STATE.

126 419
Case 2
d126 556

1. In passing upon the diligence of a defendant in a criminal case with regard to taking steps to secure the presence of a material witness at his trial the fact is to be considered that he could not procure a subpœna

for a witness "out of the county" until the return of an indictment, against him; and if it appears that he promptly procured a subpœna, when the opportunity to do so was offered, but that it could not be served because the witness had left the county in which he had been domiciled and gone to a different locality in the State, the defendant should, on proper and timely motion, be afforded such time as is necessary to secure the presence of the witness, or be granted a continuance.

2. In order to reduce a homicide from the grade of murder to that of voluntary manslaughter, where there was neither an actual assault upon the slayer nor an attempt to commit upon him a serious bodily injury, it is not necessary that the proof should show that the circumstances of the killing were in the nature of an assault or an attempt to seriously injure his person, but only that the circumstances were such as would as much justify the excitement of passion as would an actual assault or attempt to commit a serious personal injury.

3. The purpose of the deceased going late at night to the home of the defendant being a pertinent subject-matter of inquiry, it was competent to show that the former had made an engagement to there visit a young woman of unchaste character, who was temporarily an inmate of the dwelling; and additional evidence to the effect that this woman had a general reputation for lewdness was admissible as tending to show the defendant knew, or had reason to suspect, the object of the deceased in calling at the house and persisting in his endeavor to see her.

4. The law relating to the defense of one's habitation against a riotous intruder was not applicable to the facts of the case, either as disclosed by the evidence or as narrated by the defendant in his statement before the court and jury.

Submitted July 16,—Decided August 9, 1906.

Conviction of manslaughter. Before Judge Kimsey. Stephens superior court. June 15, 1906.

*J. B. Jones,* for plaintiff in error.

*W. A. Charters, solicitor-general,* contra.

EVANS, J. The defendant was indicted for the crime of murder, and convicted of voluntary manslaughter. He made a motion for a new trial, which being overruled, he excepted.

1. A written motion was submitted by the defendant, requesting the court to continue the case for the term or at least postpone the trial to some future day, in order to allow him an opportunity to obtain the testimony of a material witness. The defendant alleged in the motion, that on the night of the shooting there was staying at his home a young woman by the name of Della Farmer, who occupied a bed in the front room with his eight-year-old child; that the shooting occurred at the door within eight feet of the bed, and this absent witness saw all that happened and heard all that was

said; that she and his child (who is too young to testify) were the only persons in the room at the time of the shooting; that before he shot, the deceased advanced on him with an oath, swearing he was going to kill him, and threw his hand back to his hip pocket and attempted to draw out what appeared to be a weapon, and as the deceased did so the defendant shot, it appearing that his life was in danger; and that defendant would be able to further show by Della Farmer that the deceased was a dangerous and violent man when drinking, and that he was drinking at the time. The motion also set forth the statement that the absent witness was raised in an adjoining county, that her parents lived within two or three miles of Royston, and either in Franklin, Madison, or Hart county, and defendant believed she was there or with other relations in that section of the State. The defendant represented that his motion was made solely for the purpose of having time to prepare for trial and procuring the attendance of this witness; and that if he was granted a reasonable time, he could procure her attendance. The bill of indictment was returned into court just before it was adjourned late in the evening of the day preceding that on which the case was called for trial and the motion for a continuance made, and the defendant had procured a subpœna for the absent witness and had placed it in the hands of the sheriff. From testimony offered by the State it appeared that the prosecuting attorney had been unable to procure the attendance of Della Farmer as a witness before the grand jury, a subpœna for her having been issued, but she having left the county before it could be served. The State also showed the futility of a postponement on the idea that the presence of the witness could be secured before the court adjourned for the term, but did not attempt to show that she had gone beyond the jurisdiction of the court and could not be served with a subpœna and brought before the court at the succeeding term. Counsel for the defendant stated that he had just been informed that she had been in Bowman the previous day and was going to Athens. It further appeared that before the witness had left the county, she had evaded service of the subpœna calling on her to attend upon the grand jury. The presiding judge, after hearing the evidence submitted by the prosecution in connection with the motion of the defendant, declined to either continue the case for the term or to postpone the trial. We are of the opinion that a con-

tinuance ought to have been granted. For some time before the indictment was returned, the defendant had been confined in jail in another county. · It is true that he might have undertaken, through friends or relatives, to ascertain the whereabouts of Della Farmer and keep informed as to her movements, in anticipation that an indictment would be found against him. But, until the indictment was returned, he could procure no subpœna to issue for the witness who was "out of the county" (Penal Code, § 918), so as to detain her until the trial, and was in no way responsible for her absence from the county when the case was called.

2. In one of the grounds of the motion for a new trial complaint is made that the court charged the jury on the subject of voluntary manslaughter, the contention of the accused being that there was nothing in the evidence nor in his statement to justify a charge on that subject. The homicide occurred upon the veranda of the defendant's residence, late at night. There was evidence from which the jury could find that a lewd woman was temporarily domiciled at the defendant's residence, that the deceased had visited her during the afternoon and had made an engagement to call upon her that night; that, some time after the members of the defendant's household had retired for the night, the deceased came to his house and knocked on the door, and when the defendant came to the door the deceased inquired if the woman was there, and defendant denied that she was, and warned the deceased not to come to his house again; that within a short time thereafter the deceased returned and tapped upon the window of one of the rooms, whereupon a guest of the defendant, who occupied the room with him, called his attention to the fact that there was some one outside the window; that the defendant went to the window, but saw no one there; that within a few minutes, the deceased repeated his knocking upon the window, the defendant was again aroused by his guest, and went to the window, saying, "I will see if I can't put them away from there;" that, seeing no one outside, defendant then went to the door, opened it, and was confronted by the deceased, who insisted that the woman was in the house and repeated his demand to be allowed to see her, refusing to go away when ordered by the defendant to do so; and that the defendant, angered by the past conduct of the deceased and losing all control of his temper when the deceased persisted in his efforts to gain admission into the

house in order to gratify his lustful desires, suddenly snatched up a pistol which was lying on a shelf over the fireplace of the room, shot at the deceased, and inflicted upon him the mortal wound. From this state of facts the jury might infer that the killing was not premeditated by the defendant when he for the second time went to the door, but was the result of sudden and irresistible passion, aroused by the persistent misbehavior of the deceased and his refusal to leave the defendant's home in peace. It was for the jury to determine whether the circumstances were such as to incite passion of such a character as to exclude the idea that the shooting was done with cool deliberation and malice. It is true that mere provocation by words, threats, menaces, or contemptuous gestures can in no case suffice to reduce the killing from murder to voluntary manslaughter, and that there must be some actual assault upon the slayer, or attempt by the person killed to commit a serious injury upon his person, *or other equivalent circumstances to justify the excitement of passion* and to exclude all idea of deliberation or malice, express or implied. Penal Code, § 65. The "equivalent circumstances" contemplated by this section of our Penal Code are not necessarily such attendant facts as are in the nature of an actual assault or an attempt to commit serious injury upon the person of the slayer, but are such mitigating circumstances as are reasonably calculated to produce the same state of mind as would an actual assault upon him or an attempt to do him serious bodily injury. *Murray* v. *State,* 85 *Ga.* 378; *Edwards* v. *State,* 53 *Ga.* 428. Besides the element of hot blood, which must always be present in the crime of voluntary manslaughter, there must be in addition thereto another element, viz., an actual assault, or attempted serious injury to the person, or other equivalent circumstances which exclude the idea of malice. *Jenkins* v. *State,* 123 *Ga.* 523. It may be conceded that there was neither an actual assault upon the accused nor any attempt to do him bodily injury; yet if the circumstances attending and leading up to the homicide were such as to justify sudden and irresistible passion on his part, and such as to negative the idea that he acted deliberately and with malice, the jury would be authorized to find that the crime was not murder but voluntary manslaughter. Thus, in *Hill* v. *State,* 64 *Ga.* 453, it was held that if a man suddenly comes upon another who has debauched his wife, and with a belief that the seducer is

armed, and becoming enraged upon seeing him for the first time after learning of his guilt, and acting without premeditation, shoots him and kills him, the offense is voluntary manslaughter. The state of mind produced by these circumstances, although there was no actual assault upon or attempted personal injury to the slayer, was recognized as being similar to the uncontrollable passion which is calculated to be aroused by an actual assault or attempted bodily injury of a serious character. The colloquy which passed between the deceased and the defendant in the case at bar could not arouse that passion which the law ascribes to human infirmity, when grading a homicide as voluntary manslaughter; but there were other elements in the case which would seem to warrant the conclusion that the intrusion of the deceased upon the premises of the defendant and the persistent endeavor of the former to see an inmate of the dwelling for an unlawful purpose, against the will of the defendant and in defiance of his orders to go away, amounted to such provocation as would arouse his uncontrollable passion and produce a sudden irresistible impulse to slay the offender when peaceful attempts to induce him to abandon his lustful mission proved unavailing. The shooting was not necessarily attributable to a wanton and premeditated desire to take the life of the deceased to avenge any real or supposed wrong done to the defendant; and the trial judge properly charged the jury as to the law of voluntary manslaughter, and left them to determine whether the killing was done with deliberation and malice or under a sudden impulse of passion which the law supposes to be irresistible when aroused by an actual assault or an attempt to commit serious bodily injury upon the slayer, or by equivalent circumstances such as exclude all idea of premeditation, deliberation, or malice express or implied.

3. It was all important to inquire into the purpose of the deceased in going, late at night, to the home of the defendant and demanding to see a young woman who was temporarily an inmate of his dwelling; and it was no less important to ascertain, if possible, whether the defendant knew or had reason to suspect what that purpose was. Proof that the woman was unchaste and had made an engagement with the deceased to call to see her at night was admissible as directly bearing upon the inquiry into the purpose of the deceased in going to the defendant's house and persisting in his efforts to see one of its inmates; evidence that the wo-

man had a general reputation for lewdness was relevant as tending to show that the defendant was acquainted with her true character, and was advised of, though not in sympathy with, the object of the untimely visit of the deceased. *Price* v. *State,* 72 *Ga.* 454; *Gossett* v. *State,* 123 *Ga.* 431. The accused had no cause to complain of the admission of such light upon the tragedy.

4. The deceased went to the dwelling of the defendant upon a peaceful, though unlawful mission. The evidence did not disclose that he made any endeavor, in a riotous manner, to enter the habitation of the defendant for the purpose of assaulting or offering personal violence to any person therein; and this being so, the court properly eliminated from the charge to the jury all reference to the law relating to the defense of one's habitation against riotous intruders, embraced in the Penal Code, § 70. The court did charge section 72, which declares under what circumstances a forcible invasion of one's habitation may be resisted and prevented by the slaying of the intruder. This instruction was inapplicable to the facts of the case, but it did not operate to the prejudice of the accused, as it gave him the benefit of a defense upon which he did not rely.

As there must be another trial because of the erroneous ruling of the court upon the defendant's motion for a continuance, we are not called on to deal specifically with the complaint that a new trial was not granted on the ground of newly discovered evidence.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*