26964.   MOORE v. THE STATE.

ARGUED JANUARY 10, 1972—DECIDED FEBRUARY 11, 1972.

*Will Ed Smith,* for appellant.

*Albert D. Mullis, District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

NICHOLS, Justice. Clarence Moore, Jr. was indicted, convicted and sentenced to life imprisonment for the murder of Raymond Autrell Peacock. A motion for new trial was filed, amended and overruled and the present appeal filed.

The evidence disclosed without dispute that on the day of the homicide the defendant went to the place where the deceased was employed, asked him to step outside and within a matter of minutes the defendant shot the deceased six times with a .38 caliber pistol. The disputed facts relate to the events leading up to this encounter.

1. " 'Provocation by threats will in no case be sufficient to free the person killing from the crime of murder, or reduce the homicide from murder to manslaughter, when the killing is done solely for the purpose of resenting the provocation thus given (*Cumming v. State,* 99 Ga. 662 (27 SE 177); *Green v. State,* 195 Ga. 759 (25 SE2d 502)); but, where the killing is claimed to have been done on account of a reasonable fear in the mind of the slayer, threats accompanied by menaces, though the latter do not amount to an actual assault, may in some instances be sufficient to arouse the fears of a reasonable man that his life is in danger, or that a felony is about to be perpetrated upon him. In all such cases the motive with which the slayer acted is for determination by the jury; and if it be claimed that the homicide was committed, not in a spirit of revenge, but under the fears of a reasonable man, it is for the jury to decide whether or not the circumstances were sufficient to justify the existence of such fear. *Cumming v. State,* supra; *Willingham v. State,* 169 Ga. 142 (149 SE 887); *Warrick v. State,* 125 Ga. 133 (53 SE 1027).' *Jarrard v. State,* 206 Ga. 112 (6a) (55 SE2d 706)." *York v. State,* 226 Ga. 281 (174 SE2d 418).

The events occurring during the encounter, which re-

sulted in the death, were presented by the defendant to the jury in an unsworn statement. The defendant related a factual situation of threats and menaces and a shooting under circumstances which would have authorized the jury to believe that the defendant was acting under the fears of a reasonable man when he shot the deceased. However, such a finding was not demanded, and under the evidence adduced by the State relating to events which occurred the previous night and earlier on the morning of the homicide, the verdict was authorized by the evidence.

2. Error is enumerated on the refusal of the trial court to permit a thorough and sifting cross examination of one of the State's witnesses. The record discloses that the trial court expressly ruled that counsel for the defendant could ask this witness any question he wished and that it would be taken up question by question. The court excluded the answer to one question which had been answered three times and did not by such ruling prohibit a thorough and sifting cross examination of such witness. Compare *Hunsinger v. State,* 225 Ga. 426, 428 (169 SE2d 286), and citations.

3. Error is enumerated on the ruling on admitting a statement made by the victim shortly after the shooting which resulted in the witness taking certain actions. Assuming, but not deciding, that such statement was not admissible as a part of the res gestae it was admissible to explain the conduct of the witness. See *Code* § 38-302; *Estes v. State,* 224 Ga. 687 (164 SE2d 108), and citations. No error is shown by this enumeration of error.

4. During the opening argument by the State, a prejudiced and inflammatory statement was made by specially employed counsel for the State. A motion for mistrial was made by counsel for the defendant. The trial court instructed the jury not to consider such statement and rebuked the specially employed counsel. Thereafter, counsel for the defendant renewed his motion for mistrial, which was overruled.

"[T]his court has repeatedly held that if the trial judge acts immediately, and in the exercise of his discretion takes

such action as in his judgment prevents harm to the accused as a result of such improper statements, a new trial will not be granted unless it is clear that such action failed to eliminate from the consideration of the jury such improper statements. *Brown v. State,* 148 Ga. 264, 266 (96 SE 435); *Johnson v. State,* 150 Ga. 67 (1) (102 SE 439); *Waller v. State,* 164 Ga. 128 (4) (138 SE 67)." *Nelson v. State,* 187 Ga. 576, 583 (1 SE2d 641); *Spell v. State,* 225 Ga. 705, 708 (171 SE2d 285).

Where, as in this case, the trial court not only instructed the jury not to consider such argument but also rebuked counsel, no abuse of the discretion granted by *Code* § 81-1009 appears.

5. The jury returned to the court soon after it had retired to consider its verdict and asked the court for instructions as to the punishments which the defendant could receive under the different verdicts authorized by the court's instruction. The trial court instructed the jury that at such point in the trial they were only concerned with the guilt or innocence of the defendant of such charges and not with punishment. Error is enumerated on such instruction and it is contended that the jury should have been instructed as to the possible sentences for each crime that the jury was authorized by the court's instruction to find the defendant guilty of.

This enumeration is without merit. The Act of 1970 (Ga. L. 1970, pp. 949, 950; *Code Ann.* § 27-2534) provides in part: "At the conclusion of all felony cases and after argument of counsel and proper charge from the court, the jury shall retire to consider a verdict of guilty or not guilty *without any consideration of* punishment." (Emphasis supplied.) It is only after the initial determination of the defendant's guilt of a felony that the jury is concerned with the sentence of the defendant. To allow the jury to consider the various sentences for the various offenses authorized by the court's instruction before a determination of guilt would be to repeal the intent of the legislation providing for a prior determination of guilt before considering punishment in felony cases.

6. Error is enumerated on the refusal of the trial court to give in charge various requests to charge which had the effect of exonerating the defendant unless he did not reasonably believe that the shooting was necessary to protect himself. These charges had placed justification upon the reasonable fears of the defendant rather than the fears of a reasonable man.

In support of these enumerations of error the defendant cites *Code Ann.* § 26-902 (a) as follows: "A person is justified in threatening or using force against another when and to the extent that *he reasonably believes* that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or great bodily harm only if *he reasonably believes* that such force is necessary to prevent death or great bodily injury to himself or a third person, or the commission of a forcible felony." (Emphasis supplied by the defendant.)

In construing this language it is necessary to consider the provisions of *Code Ann.* § 26-401 (p), which defines reasonable belief. This section provides: "'Reasonable belief' means that the person concerned, acting as a reasonable man, believes that the described facts exist." Under this definition the rule exemplified by the decision in *Fudge v. State,* 190 Ga. 340, 343 (9 SE2d 259), that the fears must be those of a reasonable man, and not just the defendant's, was not changed by the enactment of the Criminal Code of Georgia which became effective July 1, 1969.

7. The refusal to give requested instructions relating to defense of habitation is enumerated as error. The evidence adduced showed that the deceased had been to the house of the defendant on the previous night and asked to see the defendant's father and wife. When told by the defendant's younger sister that he could not see them and to leave and not come back, a few words were exchanged as the deceased was leaving, but no further attempt to enter the premises was made, and this was the only encounter, prior to the

defendant seeking out the deceased at his place of employment, shown between the deceased and any member of the defendant's family anywhere. Under such circumstances, the requested charge dealing with defense of habitation was not applicable to the facts adduced upon the trial. Compare *Rumsey v. State,* 126 Ga. 419 (55 SE 167), a case where the deceased attempted to gain entrance into the defendant's home on at least three occasions upon a peaceful but unlawful mission and was shot at the door of the defendant's home.

Moreover, in the case sub judice the defendant stated: "He made an effort to draw his hand out of his pocket, and I shot him. He kept coming in on me, and I shot him to stop him. The onliest reason I shot him was to keep him from cutting me and killing me. He kept coming in on me, and I think I emptied the gun at him."

8. The remaining enumeration of error complains of the failure to give, without request, an instruction as follows: "In determining whether or not there was an interval between the provocation and killing sufficient for the voice of reason and humanity to be heard, you could consider any instance in which the defendant might have become provoked to a sudden, violent and irresistible passion. If you should find that there was more than one provocation which might have created such passion, you should also determine each interval between that provocation and the killing and determine whether or not that interval was sufficient for the voice of reason and humanity to be heard."

This contention is based upon the evidence relating to the presence of the deceased at the home of the defendant on the previous night and the defendant's statement relating to the encounter at the time of the shooting which resulted in the homicide.

The court properly instructed the jury: "A person commits voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder if he acts solely as a result of a sudden, violent and irresistible passion resulting from serious pro-

vocation sufficient to excite such a passion in a reasonable person. However, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury shall in all cases be the judge, the killing shall be attributed to deliberate revenge and punished as murder."

This charge did not limit the jury's consideration to either alleged provocation exclusively, but to the contrary, under such charge the jury could have considered any provocation shown by the evidence or the defendant's statement and based a conviction of voluntary manslaughter thereon if it decided that the interval between the provocation which caused the shooting and the shooting was not sufficient for the voice of reason and humanity to be heard.

Assuming, but not deciding, that the charge contended for should have been given upon timely request, yet, in the absence of such a request the charge given the jury amply covered the law respecting such subject.

No error of law appearing and the verdict of the jury being authorized by the evidence, the conviction of the defendant must be affirmed.

*Judgment affirmed. All the Justices concur.*