## 37556. VAUGHN v. THE STATE.

GREGORY, Justice.

Appellant, Junior Vaughn, was convicted of the murder of Ray Gene Oglesby. The State sought the death penalty but the jury recommended life imprisonment. In this appeal Vaughn contends that his written confession was improperly admitted over his objection. We agree and reverse.

Vaughn and his wife worked for the victim, Ray Oglesby, on the latter's farm. Oglesby became very ill on March 13, 1979 and died some 40 hours later of causes then unknown, although it was suspected that he had come into contact with some kind of poison. Oglesby's brother and some friends had unsuccessfully searched Oglesby's farm prior to his death in an attempt to look for anything that might have poisoned him. On the morning of the 15th, B. Howard Lawson went to the farm to take care of some things for Oglesby. There he met Junior Vaughn who told Lawson that late Tuesday afternoon Oglesby had taken three beers out of the refrigerator, opened one and left with the two unopened ones in his hand. Vaughn handed to Lawson three beers left in the refrigerator suggesting that they should be checked.

Ray Oglesby died March 15. On the sixteenth his brother, Orbin, still looking for something that could have caused Ray's death, found a paper bag in Ray's jeep that contained two beers. He examined

them. One of the bottles had a slight but noticeable powdery residue in the bottom. Its cap was not quite level and it contained more liquid than the other.

All five bottles were sent to the crime lab. The bottle with the powdery residue contained a fatal dose of arsenic. An autopsy performed on Oglesby showed that he had died of acute arsenic poisoning.

About 6:00 a. m. on Saturday, March 24, 1979, Vaughn's wife called the sheriff and asked him to come to the Vaughn residence. When he arrived Vaughn and his wife were outside. The sheriff suggested they all get in his car. Once inside, Vaughn said, "I probably killed Ray Gene Oglesby." The sheriff immediately stopped Vaughn and gave him his Miranda rights. Afterwards Vaughn admitted he had put rat poison in Oglesby's beer.

The sheriff then placed Vaughn under arrest and transported him to jail. Vaughn was held without a warrant from March 24, 1979 until March 28, 1979 when an arrest warrant was finally obtained. He was not allowed any visitors. During this period of time, Vaughn told the sheriff he wanted to talk to a lawyer but couldn't afford one. The sheriff told Vaughn to contact the Public Defender; however, Vaughn was unable to do so.

On Tuesday, March 27, 1979, after Vaughn had requested an attorney and before an arrest warrant had been obtained, Vaughn was taken to Statesboro and given a polygraph test. The record does not show what questions were asked or what answers were given, but after the test was administered, Vaughn was informed that he had not told the truth. Vaughn, an illiterate, then gave another statement which was reduced to writing by the sheriff. This second statement was more detailed than the first as to the means by which the arsenic had been obtained and placed into Oglesby's beer, and also explained Vaughn's motive: he had the mistaken belief that the house he was purchasing from Oglesby would be his, free and clear, if Oglesby were to die.

Vaughn had talked to a friend of his after Oglesby's death but prior to his arrest and said that Ray Ogelsby had told him that if anything were to happen to Ray, the house would automatically be paid for. Vaughn also told his friend that rat poison wouldn't kill anybody.

It was shown during the trial that Vaughn received nothing on account of Oglesby's death. Oglesby's wife, whom Oglesby had married three and one-half months before his death, acquired title to four hundred acres of land conveyed in a joint survivorship warranty deed to both of them less than two weeks before Oglesby's death. Vaughn contended that she had offered him $50,000 to kill Oglesby.

Vaughn's attorney testified that he had purchased rat poison of the same kind as Junior Vaughn had purchased. He produced a bottle of beer to which he had added the rat poison approximately 24 hours earlier. No powdery residue was visible in that bottle. He produced another bottle of beer and, in the presence of the jury, added rat poison to it. No powdery residue was visible in this bottle either. Some evidence indicated that kind of rat poison did not contain enough arsenic to cause death if a small amount were added to a bottle of beer.

During cross-examination by Vaughn's attorney, the sheriff explained why he did not take Vaughn before a magistrate as required by Code Ann. § 27-212, and why he questioned Vaughn despite his request for an attorney:

"Q. All right, you took Junior into custody and took him to the jail. Why didn't you take him before a magistrate at that time?

A. It was on a Saturday. I didn't have a magistrate.

Q. Why didn't you take him on a Sunday?

A. Well, I didn't have one Sunday. On the weekend you can't get nobody around here. Everybody is closed. The offices close and he didn't request it for one thing.

Q. Why didn't you take him Monday then?

A. He didn't request it.

Q. Are you aware the law requires you to take a person arrested without a warrant before a magistrate within forty-eight hours?

A. He was wanting to get in touch with you, Mr. Argo, and he couldn't so you could advise him what to do. I was waiting on you to come down to Emanuel County.

Q. And you questioned him knowing he wanted to talk to a lawyer?

A. Well, he wanted to talk to you, sure. He wanted to talk to you. He wanted you to represent him, but you wasn't here. We couldn't stop our process waiting on you."

(1) Appellant's contention that the second written statement is inadmissible is two-pronged. He claims that the statement was the fruit of an illegal arrest and he claims that his request for an attorney barred further questioning.

(a) Code Ann. § 27-212 states that a person arrested without a warrant shall be conveyed without delay to an officer authorized to receive an affidavit and issue a warrant. It further states that: "No such imprisonment shall be legal beyond a reasonable time allowed for this purpose and any person who is not conveyed before such officer within 48 hours shall be released." An arrest warrant not having been obtained, appellant should have been released Monday morning. His continued detention thereafter was illegal.

We have held many times that an illegal arrest does not render a subsequent conviction invalid. See, e.g., *Furman v. State,* 225 Ga. 253 (5) (167 SE2d 628) (1969). The requirement of Code Ann. § 27-212 that one "arrested without a warrant and not conveyed before an officer authorized to issue warrants within 48 hours 'shall be released' means that such person shall be released from imprisonment or custody until a warrant is obtained — not that he shall be released from trial after he has been indicted for a crime." *Blake v. State,* 109 Ga. App. 636, 641 (137 SE2d 49) (1964).

The issue here is whether appellant's second statement, made while in custody at a time when that custody was illegal, was a fruit of the illegal detention and should have been suppressed. Appellant relies on Brown v. Illinois, 422 U. S. 590 (95 SC 2254, 45 LE2d 416) (1975). We do not, however, rest our decision on that case. "[T]he exclusionary sanction applies to any 'fruits' of a *constitutional* violation . . ." (Emphasis supplied.) United States v. Crews, 445 U. S. 463 (100 SC 1244, 1249, 63 LE2d 537) (1980). An illegal arrest does not necessarily violate the Constitution and we leave open the extent to which a continued detention without a warrant would implicate constitutional rights.[1]

(b) The question of the admissibility of the written confession is controlled by Edwards v. Arizona, —— U. S. —— (101 SC 1880, 68 LE2d 378) (1981). There the court noted what has been characterized as a *per se* rule[2] established in Miranda "that the assertion of the right to counsel was a significant event and that once exercised by the accused, the interrogation must cease until an attorney is present." 101 SC 1885. The court then said that it would be "inconsistent with Miranda and its progeny for the authorities, at their insistence, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." Id. Therefore, the court held that an accused who invokes his right to counsel[3] will not be subject to further interrogation until counsel has been provided, "unless the accused himself initiates further communication, exchanges, or conversations with the police." Id.

---

[1] See Gerstein v. Pugh, 420 U. S. 103 (95 SC 854, 43 LE2d 54) (1975), which held that the Fourth Amendment requires at least a non-adversarial judicial determination of probable cause as a prerequisite to an extended restraint on liberty following a warrantless arrest.

[2] See Michigan v. Mosley, 423 U. S. 96 (96 SC 321, 46 LE2d 313) (1975) (White, J., concurring).

[3] The invocation of the right to remain silent is to be distinguished from a request for an attorney. Michigan v. Mosley, supra.

All of the above supposes a clear invocation of the right to counsel. The Edwards court cited, with apparent approval, a Fifth Circuit case which holds that waiver is possible if the request for counsel is equivocal. See Nash v. Estelle, 597 F2d 513 (5th Cir. 1979) (en banc).

The defendant in Nash had indicated during the course of being advised of his rights that he wanted an attorney. When the interrogator, an assistant district attorney, said the interrogation would have to stop, the defendant protested and indicated that he wanted to continue. Further questions asked were limited to clarifying the ambiguity of the defendant's responses until it was clear that he wanted to proceed. This, the Fifth Circuit said, was permissible. In Thompson v. Wainwright, 601 F2d 768 (1979), however, it was emphasized that when further questioning clarified the request as a present desire for the assistance of an attorney, *"all* interrogation must cease until that is provided, just as in the case of an initial, unambiguous request for an attorney." Id. at 771.

There is no indication in the record in this case that appellant's request for an attorney was either ambiguous or equivocal. Nor is there any indication in the record that appellant initiated the resumption of the interrogation. His written statement should, therefore, not have been admitted.[4]

(2) The harmless constitutional error standard has been applied to the erroneous admission of a confession. See Milton v. Wainwright, 407 U. S. 371 (92 SC 2174, 33 LE2d 1) (1972); Null v. Wainwright, 508 F2d 340 (1975). A conviction will be affirmed despite constitutional error if the error is harmless beyond a reasonable doubt. Chapman v. California, 386 U. S. 18 ( 37 SC 824, 17 LE2d 705) (1967).

"A constitutional error is harmless, if there is no 'reasonable possibility that the evidence complained of might have contributed to the conviction' Fahy v. Connecticut, 375 U. S. 85, 86-87, 84 SC 229, 230, 11 LE2d 171 (1963). The test is not 'whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of,' *id.,* but whether the evidence complained of may have influenced the factfinder's deliberations, *see* Harrington v. California, 395 U. S. 250, 254, 89 SC 1726, 23 LE2d 284 (1969)." Harryman v. Estelle, 597 F2d 927, 929 (1979). Overwhelming

---

[4] Although there was a lapse of time between appellant's request for an attorney and the resumption of the interrogation, Edwards v. Arizona is not distinguishable on this basis, as a similar lapse of time occurred there also.

evidence of the defendant's guilt can negate the possibility that the constitutional error contributed to the conviction. Milton v. Wainwright, supra.

Even without the erroneously admitted confession, appellant's jury unquestionably had before it sufficient evidence to support a finding of guilt. We cannot say, however, that even with appellant's first, properly admitted, confession, the evidence of guilt was overwhelming. There was at least some evidence that the rat poison appellant used would not have left a powdery residue and wasn't strong enough to have caused the high arsenic concentration found in the bottle of beer containing the powdery residue. There was also some evidence another stood to gain more from Oglesby's death than did appellant and had contacted appellant prior to Oglesby's death about the possibility of his demise.

There is another reason we cannot say that the erroneously admitted confession did not contribute to the verdict nor influence the jury's deliberations. Shortly after the jury retired to deliberate, they noticed the written confession was not among the items of evidence brought to the jury room by the bailiff. The jury returned to ask the court if the written confession had been admitted into evidence; if it had been, they did not have it in their possesion. The trial court informed the jury that the second statement had been admitted into evidence, but the law provided such a statement was not to go out with the jury. After the jury retired for further deliberations, the assistant district attorney excepted to the court's instruction. He felt the jury did not understand that they could consider the text of the statement as it had been read to them and were still confused on the matter. The trial court recalled the jury and recharged it as to the admissibility of a written confession. The jury then asked that the transcript of that portion of the testimony wherein the statement was read, be replayed to them. The request was granted and the text of the written confession was replayed to the jury.

In view of the emphasis on the written confession and the jury's obvious concern with it, we cannot say that it did not influence the jury's verdict.[5]

While the presence of a lawfully admitted, comprehensive confession corroborated by other evidence may provide overwhelming

---

[5] We, of course, are not addressing the propriety of recharging a jury or replaying evidence to them. See, *Edwards v. State,* 233 Ga. 625(2) (212 SE2d 802) (1975); *Hurt v. State,* 239 Ga. 665 (238 SE2d 542) (1977); *Person v. State,* 235 Ga. 814 (221 SE2d 587) (1976).

evidence of a defendant's guilt, rendering a constitutional error harmless, we do not find harmless error in this case. Compare, Milton v. Wainwright, supra, and Schneble v. Florida, 405 U. S. 427 (92 SC 1056, 31 LE2d 340) (1972). Appellant's conviction must be set aside.[6] His other enumeration of error need not be considered.

*Judgment reversed. Jordan, C. J., Hill, P. J., Marshall, Clarke and Smith, JJ., concur.*

DECIDED SEPTEMBER 9, 1981.

*Kenneth D. Kondritzer,* for appellant.

*H. Reginald Thompson, District Attorney, Richard Malone, Assistant District Attorney, Arthur K. Bolton, Attorney General, Charles E. Brown, Assistant Attorney General,* for appellee.

---

[6] We recently affirmed the conviction of Helen Vaughn. *Vaughn v. State,* 247 Ga. 136 (274 SE2d 479) (1981). Her case did not involve an in-custody interrogation conducted after an ungranted request was made for the assistance of an attorney.