## 73204. McDONALD v. THE STATE.
### (356 SE2d 264)

Pope, Judge.

Defendant Aubrey McDonald appeals his conviction of voluntary manslaughter (OCGA § 16-5-2). Defendant and the victim, Terry Givens, knew each other prior to the incident which ended in Givens' death. The victim was living with his uncle, a blood relation, and his aunt. His aunt's daughter Gwen was living elsewhere with defendant by whom she had a child. The victim had visited defendant's apartment several times prior to January 22, 1986. When he arrived there at about 5:00 p.m., defendant was home on sick leave with a strained groin muscle. Gwen and the infant were also present. During a conversation defendant implied the victim had lied. This led to an argument which became increasingly heated. Finally, acceding to the victim's request to settle the matter outside, defendant walked the victim to the door but then locked him out. After the victim banged on the door for five to ten minutes, Gwen let him back in after which the argument resumed. The men then went outside and the victim knocked defendant down. Two friends separated them. Defendant returned to the house, got his car keys, opened the trunk, and took out a knife which he brandished at the victim.

There are two versions of what transpired next. According to the State, defendant advanced on the victim and stabbed him. According to the defense, the victim charged the defendant and in a brief struggle impaled himself on the knife. The victim received a "gaping wound" from which he shortly died.

The police officers who arrived on the scene, after piecing together some of the details of the homicide, focused their investigation on defendant. They looked for a knife after receiving Gwen's permission to search the apartment but were unable to find it. They did find the knife sheath after obtaining defendant's consent to search his automobile. Defendant related, on trial, that he did not remember what happened to the knife during the confusion after the stabbing.

1. Defendant sought to justify his actions based on a reasonable belief that he had to use force to defend himself and his family. In support of this contention defendant sought to introduce a tape recording of conversations between the victim, his aunt and Gwen a few weeks before the slaying. At that time, defense counsel argues, the victim made threats against defendant and Gwen.

The State filed a motion in limine to suppress all evidence relating to the victim's general reputation for violence and of any specific acts or threats committed by the victim against defendant and any other party. After a hearing, the trial court granted the motion, having concluded that the tape contents were irrelevant. In doing so the court recognized the rule that a deceased's general reputation for vio-

lence, as well as proof of prior specific threats towards or assaults upon defendant, is admissible upon proof of a prima facie case of present assault. The essential elements are "that the deceased was the assailant; that deceased assailed defendant; and that defendant was honestly seeking to defend himself." *Curtis v. State*, 241 Ga. 125, 126 (243 SE2d 859) (1978). In making its ruling, the trial court was primarily concerned with whether the tape itself established the three essential elements. This was too narrow a view, for evidence extrinsic to the tape itself would be pertinent in ascertaining if the tape should be admitted.

OCGA § 16-3-21 formulates our present concept of self-defense. It sets out that a person is justified in using force when he reasonably believes it is necessary to defend himself or another person from unlawful force. This refers to the fears of a reasonable man, not just those of defendant. *Moore v. State*, 228 Ga. 662 (6) (187 SE2d 277) (1972).

Early in this state's judicial history, our courts pronounced the maxim "that naked threats unaccompanied with personal violence were admissible to show the reasonableness of the defendant's fears, provided a knowledge of the threats were brought home to him." *Monroe v. State*, 5 Ga. 85, 136 (1848), citing *Howell v. State*, 5 Ga. 48 (2) (1848). Since that time numerous cases have recognized that principle. *Baker v. State*, 142 Ga. 619, 626 (83 SE 531) (1914), held that evidence of prior threats is admissible which tends to "throw light on the question of whether the accused acted under such fears of a reasonable man at the time of the homicide as would justify him in taking the life of the deceased. . . ." Accord *Moore v. State*, supra; *Haynes v. State*, 134 Ga. App. 588 (1) (215 SE2d 342) (1975); *Bird v. State*, 71 Ga. App. 643 (4) (31 SE2d 835) (1944) and cits.

The State apparently espouses the view that threats are of no consequence where they are not directly related to the defendant, but this is not so. Threats may be communicated via third persons from the deceased to defendant. *Vincent v. State*, 153 Ga. 278, 292 (112 SE 120) (1922). Here the defendant heard the contents of the tape prior to the January 22 incident.

The evidence in the form of a tape recording was not submitted to establish the victim's general reputation for violence, compare *Black v. State*, 230 Ga. 614 (3) (198 SE2d 314) (1973), or to show circumstances or incidents not between the victim and defendant. Compare *Clenney v. State*, 256 Ga. 116 (3) (344 SE2d 216) (1986); *Conklin v. State*, 254 Ga. 558 (8) (331 SE2d 532) (1985). In view of the Georgia policy of admitting evidence to enable a jury to determine the defendant's motive and intent and whether he acted as a reasonable man, the evidence should not have been excluded. *Daniels v. State*, 248 Ga. 591 (1) (285 SE2d 516) (1981). A question raised by

the theory of self-defense was, what was in defendant's mind at the time of the stabbing? The recorded statements of the victim, which defendant had heard, were relevant to show defendant's perception of the victim and his expected behavior towards defendant at the time of the incident on trial.

This leaves the issue of whether the defendant was harmed by exclusion of the tape. Our hearing of it reveals the confused babbling of a man obviously under the influence of intoxicants. It is doubtful in our opinion that the statements would arouse the fears of a reasonable man on the occasion in issue. Accordingly, we find it highly probable that the trial court's erroneous exclusion of same did not contribute to the jury's verdict. See *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976); *Dill v. State*, 222 Ga. 793 (1) (152 SE2d 741) (1966). Therefore, any error in this regard was harmless.

2. After defendant was arrested, he was informed of his *Miranda* rights and stated he understood them. He was then asked what happened and responded "that he didn't know anything about a stabbing; that he didn't do it." No other conversation took place until on the way to the police station when an officer inquired of defendant if he understood his rights and received an affirmative answer. During the drive defendant volunteered that he had stabbed the victim. Defendant enumerates as error only the statement made at the scene of the incident, and we confine our consideration to that point.

Relying primarily on *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), defendant asserts his right to advice of counsel before questioning and argues such right may be waived only under very limited circumstances not present here. As our appellate courts have interpreted these two decisions, the threshold consideration, essential to assert procedural safeguards, is that the accused actually invoked his right to counsel. *Hall v. State*, 255 Ga. 267 (1) (336 SE2d 812) (1985); *Heard v. State*, 165 Ga. App. 252 (3) (300 SE2d 213) (1983). Defendant here did not in any manner request or invoke his right to counsel, even equivocally. Compare *Vaughn v. State*, 248 Ga. 127 (1b) (281 SE2d 594) (1981). Defendant's statement at the scene of the incident was admissible.

3. The trial court's charge on intent was not burden shifting and thus constitutionally defective under *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979), and *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985). See *Flynn v. State*, 255 Ga. 415, 416 (2) (339 SE2d 259) (1986).

4. Our review of defendant's remaining enumerations of error discloses no ground for reversal.

*Judgment affirmed. Banke, P. J., and Benham, J., concur. Birdsong, C. J., concurs and also concurs specially. McMurray, P. J.,*

*concurs in the judgment only. Deen, P. J., concurs specially. Carley, Sognier, and Beasley, JJ., dissent.*

DEEN, Presiding Judge, concurring specially.

While concurring with the judgment of affirmance, I cannot agree with the holding that the exclusion of the tape recording in this case was error of any kind. Evidence of prior threats levelled at the defendant by the deceased may be admissible to show that the defendant's fear for his own life was reasonable, but in the instant case there were no real threats contained in the tape recording.

Reviewing this issue requires listening to the recording. Having listened to the entire tape, this writer concludes that the only objective and realistic description of the tape's contents is that of an inordinately inebriated man who alternatively declares his love for those present and then verbally abuses them. (In a portion of that verbal abuse, which was addressed to the defendant's girl friend but concerned the defendant, the victim only boasted that he would have the defendant perform fellatio.) The tape recording clearly indicates that the people who were actually present hardly took the victim's drunken tirade seriously; for this court to do otherwise would mock reality.

Because the tape recording in question contained no threat by the victim against the defendant, the trial court's exclusion of that recording was not error.

I am authorized to state that Chief Judge Birdsong joins in this special concurrence.

BEASLEY, Judge, dissenting.

I must dissent because I cannot concur with the final conclusion drawn in Division 1 of the opinion. Having listened to the tape as best I could from the perspective and in the circumstances of the defendant, I cannot say it was harmless error as a matter of law. The issue was, what was on defendant's mind when Givens lunged at him, considering their relationship, past events, and the recent tape? The latter was a part of the basis which defendant says influenced his action.

It is the jury's province, not the court's, to determine if, considering all of the circumstances, a reasonable fear was justified, as claimed. *York v. State*, 226 Ga. 281 (174 SE2d 418) (1970). See also the clear and well-stated instruction of the Supreme Court in this regard in *Milton v. State*, 245 Ga. 20, 25 (262 SE2d 789) (1980).

I am authorized to state that Judge Sognier joins in this dissent.

DECIDED MARCH 20, 1987 —
REHEARING DENIED APRIL 3, 1987 — 

*Frank K. Martin*, for appellant.
*William J. Smith, District Attorney, Bradford R. Pierce, Assistant District Attorney*, for appellee.