*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Jorge A. HURTADO, Cadet**
United States Army, Appellant

**No. 25-0212**
Crim. App. No. 20240609

Argued December 9, 2025—Decided March 23, 2026

Military Judges: William C. Ramsey

For Appellant: *Captain Jessica A. Adler* (argued); *Lieutenant Colonel Kyle C. Sprague* and *Jonathan F. Potter*, Esq. (on brief); *Colonel Philip M. Staten* and *Major Robert W. Rodriguez.*

For Appellee: *Captain Clare M. Murphy* (argued); *Colonel Richard E. Gorini* and *Major Isaac J. Dickson* (on brief).

Judge SPARKS delivered the opinion of the Court, in which Judge MAGGS and Judge JOHNSON joined. Chief Judge OHLSON filed a dissenting opinion, in which Judge HARDY joined.

————————

Judge SPARKS delivered the opinion of the Court.

Appellant was charged with ten specifications of abusive sexual contact, two specifications of sexual assault, and one specification of indecent exposure in violation of Articles 120 and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 920c. Before trial, the military judge granted Appellant's motion to suppress his statement to law enforcement because Appellant had unequivocally invoked his right to counsel prior to questioning. The Government appealed that ruling to the United States Army Court of Criminal Appeals pursuant to Article 62, UCMJ, 10 U.S.C. § 862(a)(1)(A). The lower court granted the appeal and vacated the military judge's ruling. *United States v. Hurtado*, No. ACM 20240609, 2025 CCA LEXIS 136, at *7-8, 2025 WL 946397, at *3 (A. Ct. Crim. App. Mar. 25, 2025) (unpublished).

We granted review to determine whether the military judge abused his discretion in concluding that Appellant's statement, "I mean, I would like to speak to a lawyer, but um, yeah," was an unequivocal invocation of his right to counsel.[1] For the reasons set forth below, we hold that Appellant's statement would be understood by a reasonable law enforcement officer as a clear request for counsel and therefore constitutes an unequivocal invocation of the right to counsel. Accordingly, the military

---

[1] We granted review of the following issues:

> I. Whether the military judge's ruling was not an abuse of discretion.

> II. Whether the military judge made clearly erroneous factual findings and the Army Court's "mere disagreements" justify deviating from the standard this Court mandates under Article 62.

*United States v. Hurtado*, __ M.J. __ (C.A.A.F. 2025) (order granting review).

judge did not abuse his discretion in granting Appellant's motion to suppress his statements to law enforcement, and we reverse the decision of the Army Court of Criminal Appeals.

**Background**

On January 23, 2024, Appellant was questioned by the United States Army Criminal Investigative Command (CID). During the interview, Special Agent (SA) NL asked Appellant whether Appellant had "ever requested a lawyer after being read [his rights]." Appellant replied, "[n]o this is the first time." SA NL next asked, "[d]o you want a lawyer at this time?," to which Appellant responded, "I mean, I would like to speak to a lawyer, but um, yeah." SA NL replied, "Okay," before reasking: "So you want a lawyer at this time?" SA NL then explained to Appellant what the process would be if he invoked his right to counsel. Appellant ultimately made various admissions to the charged offenses.

In relevant part, Appellant moved to suppress these statements, arguing that the investigators ignored his invocation of his right to counsel. In ruling on Appellant's motion, the military judge found pursuant to *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1982), that if a suspect invokes his right to counsel, law enforcement must immediately cease questioning him until an attorney is present. Citing *Davis v. United States*, 512 U.S. 452, 452 (1994), the military judge explained that "[t]he *Edwards* rule serves the prophylactic purpose of preventing officers from badgering a suspect into waiving his previously asserted *Miranda* rights, and its applicability requires courts to determine whether the accused actually invoked his right to counsel." Further citing to *Davis*, the military judge found that "[t]his is an objective inquiry, requiring some statement that can reasonably be construed to be an expression of a desire for an attorney's assistance." Ultimately, the military judge concluded that Appellant's statement, "I mean, I would like to speak to a lawyer, but um, yeah" was an unequivocal invocation of his right to counsel and, therefore, suppressed any statements

Appellant made to law enforcement after that point in the interview.

The Government appealed the military judge's decision under Article 62, UCMJ. The Army Court of Criminal Appeals found that the word "but" in the middle of Appellant's statement rendered his request for counsel inherently equivocal. *Hurtado*, 2025 CCA LEXIS 136, at *6, 2025 WL 946397, at *3. In the lower court's view, Appellant's expressed desire to speak to a lawyer, immediately followed by "but" signaled a contradictory intent. *Id.* at *7, 2025 WL 946397, at *3. Applying a de novo review, the lower court concluded that the military judge erred in finding that Appellant unequivocally invoked his right to counsel. *Id.*, 2025 WL 946397, at *3.

## Standard of Review

"In an Article 62, UCMJ, appeal, this Court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial," which in this case is Appellant. *United States v. Becker*, 81 M.J. 483, 488 (C.A.A.F 2021) (quoting *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017)). "On matters of fact with respect to appeals under Article 62, UCMJ, we are bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous." *Pugh*, 77 M.J. at 3 (citing *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004)). We review a military judge's ruling on the suppression of evidence for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2008). On mixed questions of law and fact, such as this one, we examine the military judge's findings of fact for clear error and review his conclusions of law de novo. *United States v. Rodriguez,* 60 M.J. 239, 246 (C.A.A.F. 2004).

## Discussion

The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court held that, "the prosecution may not use

statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). It further held that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statements he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

Supreme Court precedent is clear "that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, 451 U.S. at 484 (citations omitted).

To effectively invoke the right to counsel and trigger the *Miranda/Edwards* protections, "the suspect must unambiguously request counsel." *Davis*, 512 U.S. at 459. Whether a suspect has done so "is an objective inquiry." *Id.* at 458-59 (citing *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987)). Thus, the suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. Once a suspect unambiguously invokes the right to counsel, authorities must immediately cease questioning. *Michigan v. Mosely*, 423 U.S. 96, 104 (1975); Military Rule of Evidence 305(c)(4). However, should that statement ultimately be ambiguous, indicating that "the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459.

This appeal turns on whether Appellant's statement to SA NL that "I mean, I would like to speak to a lawyer, but um, yeah" would be understood by a reasonable law enforcement officer as a request for counsel. Neither party disputes the military judge's factual finding as to the words

5

Appellant actually used.[2] The Government instead argues that the military judge applied an incorrect legal standard by failing to apply the *Davis* "reasonable officer" test.

The military judge's written ruling does not explicitly recite the "reasonable officer" test. Nonetheless, military judges are presumed to know and correctly apply the law absent clear evidence to the contrary. *See United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (noting that "[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary"). Here, the military judge expressly cited *Davis*, which sets out the reasonable police officer standard, and nothing in the record overcomes the presumption that he applied the proper test.

The Government further contends that Appellant's use of "like," "but," and "um" rendered his statement equivocal. As noted above, the determination of whether an invocation is unambiguous (requiring the agents to immediately terminate the questioning) or ambiguous (permitting further clarifying questions) is an objective inquiry based upon how a "reasonable police officer" would view the comments. *Davis* 512 U.S. at 459. The military judge found that Appellant unequivocally invoked his right to counsel when he stated, "I mean, I would like to speak to a lawyer, but um, yeah." Viewing the evidence in the light most favorable to Appellant, a reasonable law

---

[2] With respect to the second granted issue, the Government and the Army court take issue with various factual findings made by the military judge after he found that Appellant unequivocally invoked his right to counsel. This issue is moot based on our ultimate holding that the military judge did not abuse his discretion in finding that Appellant unequivocally invoked his right to counsel. Once Appellant invoked his right to counsel, the interview should have ceased. *Mosley*, 423 U.S. at 104. Thus, any statements occurring thereafter do not affect the outcome. Moreover, because this Court reviews the military judge's ruling directly in Article 62, UCMJ, appeals, we need not address whether the lower court's factual findings were appropriate. *Becker*, 81 M.J. at 488.

enforcement officer would understand "I would like to speak to a lawyer" as a clear request for counsel, and the intervening filler phrase "but um," followed by the affirmative "yeah," does not change that meaning.[3]

In ordinary speech, filler words such as "but um," often serve as conversational hesitations rather than signaling a retraction of the speaker's expressed intent, particularly in a stressful custodial interview. *See Sessoms v. Grounds*, 776 F.3d 615, 629 (9th Cir. 2015) ("Context and circumstances matter."). That Appellant's statement included such filler words does not render his request ambiguous, especially where he both began by expressing a desire to speak with a lawyer and ended with an affirmative "yeah." *See United States v. McLaren*, 38 M.J. 112, 115 (C.M.A. 1993) ("While the words, 'I think,' used by appellant in this case, could render a request for counsel equivocal, they are not in themselves dispositive. The language of appellant's comment must be evaluated in the context of the circumstances in which it was spoken."). A reasonable law enforcement officer hearing Appellant's statement would therefore understand it as a request for an attorney, triggering the obligation to cease questioning.

Applying de novo review to the military judge's legal conclusion, we find no error. The military judge correctly determined that Appellant unequivocally invoked his right

---

[3] In their dissent, our colleagues contend that Appellant's use of the word "but" injects ambiguity into his request for counsel and that the phrase "um, yeah," immediately following "but," may confirm doubt about whether he wanted an attorney rather than relate back and reaffirm his earlier request for counsel. *United States v. Hurtado*, __ M.J. __ (1-3) (C.A.A.F. 2026) (Ohlson, C.J., with whom Hardy, J., joined, dissenting). The dissent cautions that there is no "tie-goes-to-the-runner" canon under which Appellant may seek shelter and that any plausible ambiguity, doubt, or alternative reading necessarily renders the statement not "unambiguous." *Id.* at __ (3). We need not and do not rely on such a canon because we conclude that Appellant's statement was not ambiguous. As we explain, a reasonable law enforcement officer hearing Appellant's statement would understand it was a request for an attorney.

to counsel, and once he did so, law enforcement was required to cease questioning. Because CID continued questioning Appellant after that invocation, the military judge did not abuse his discretion in suppressing Appellant's subsequent statements.

## Decision

The decision of the United States Army Court of Criminal Appeals is reversed. The case is returned to the Judge Advocate General of the Army for remand to the military judge for further proceedings consistent with this opinion.

Chief Judge OHLSON, with whom Judge HARDY joins, dissenting.

The issue in this case is simple—whether Appellant's statement "I mean, I'd like to speak with an attorney, but um, yeah," was an unequivocal and unambiguous invocation of his right to counsel. Given Appellant changed his mind twice in the same sentence, the answer is also simple—No. Because the majority concludes otherwise, I respectfully dissent.

The Supreme Court has made it clear that the onus is on an accused to invoke his or her right to counsel. And importantly, the Supreme Court also has made it clear that an accused's request for counsel must be *unequivocal* and *unambiguous*. This means that an invocation must be "sufficiently clear[] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). If an accused's statement is not an unequivocal and unambiguous request for counsel, the interviewing officers "have no obligation to stop questioning him." *Id.* at 461-62.[1]

Appellant's response started off clear: "I mean, I'd like to speak with an attorney. . . ." This part of Appellant's statement articulates a desire to have counsel present. Except Appellant then changes course mid-sentence, saying "but, um." His use of "but" necessarily raises the question— "but" what? *See United States v. Hampton*, 675 F.3d 720, 727 (7th Cir. 2012) (holding " 'Yeah, I do, but you . . .' " in response to law enforcement asking if accused would like a lawyer was ambiguous "because [accused]'s reference to a lawyer used the hedge word 'but' ").[2] Appellant then

---

[1] When an accused does invoke his right to counsel, he "is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis*, 512 U.S. at 458.

[2] Of course, "but" need not make an invocation ambiguous in *all* instances. Where an accused says, "I want a lawyer, but can't afford one," invocation would be satisfied. *See Vaughn v. State*, 281 S.E.2d 594, 595 (Ga. 1981) (finding no ambiguity where an accused "told the sheriff he wanted to talk to a lawyer but

*United States v. Hurtado*, No. 25-0212/AR
Chief Judge OHLSON, with whom
Judge HARDY joins, dissenting

vaguely ended his statement with "yeah"—maybe changing his mind for the second time and reaffirming his request for counsel, or maybe indicating nothing at all. I do not find this muddled, inconsistent statement to be a clear assertion of the right to counsel.

Appellant urges against interpreting "but" as equivocation here because no explicit invalidation of his request actually followed. The majority similarly casts "but" as a mere "filler phrase" which "serve[d] as [a] conversational hesitation[] rather than signaling a retraction of the speaker's expressed intent." *United States v. Hurtado*, __ M.J. __, __ (7) (C.A.A.F. 2026). But this approach disregards the Supreme Court's requirement of a "clear assertion of the right to counsel." *Davis*, 512 U.S. at 460. The Supreme Court expressly recognized that this rule might disadvantage a suspect who—"because of fear, intimidation, lack of linguistic skills, or a variety of other reasons—will not clearly articulate their right to counsel although they actually want to have a lawyer present," but the Court explained that the strict rule was necessary for clarity and ease of application. *Id*. at 461. Thus, the question isn't whether there was an express retraction within the statement, nor whether Appellant's use of the word "but" was a mere verbal tic. Rather, the question is whether the words uttered by Appellant were objectively unambiguous.

In deciding this issue, what transpired in *Davis* is instructive. There, the Supreme Court held that the statement "*Maybe* I should talk to a lawyer" was not unequivocal. 512 U.S. at 462 (emphasis added). Here, Appellant's use of the word "but" similarly injected doubt into his statement, opening the door for the interviewing officer to ask clarifying questions. *See But, Merriam Webster Unabridged Dictionary*, https://unabridged.merriam-webster.com/unabridged/but (last visited Mar. 18, 2026) (defining "but" as introducing a phrase or clause "*contrary*" to or

---

couldn't afford one"). There are no magic words which are per se sufficient or deficient and thus a contextual analysis is needed.

*United States v. Hurtado*, No. 25-0212/AR
Chief Judge OHLSON, with whom
Judge HARDY joins, dissenting

"*in opposition*" with what has already been stated (emphases added)).

Moreover, the fact that Appellant's use of the word "but" is followed by "um, yeah" does not bear the weight which the majority ascribes to it. The majority argues that the "um, yeah" relates back and "affirm[s]" the supposed prior expression of a desire for a lawyer. *Hurtado*, __ M.J. at __ (7). However, the phrase "um, yeah" could as easily be understood as affirming the word "but"; that is, as affirming Appellant's doubt, hesitation, or equivocation as to whether he wanted a lawyer or not. This interpretation is particularly plausible because "um, yeah" immediately follows the word "but." Or perhaps "um, yeah" simply has no semantic value at all. Accordingly, Appellant's invocation of that phrase does nothing to resolve the ambiguity present in his statement.

Simply put, a "statement either is . . . an assertion of the right to counsel or it is not." *Davis*, 512 U.S. at 459 (internal quotation marks omitted). There is no "tie-goes-to-the-runner" canon of interpretation under which Appellant may seek shelter. Any plausible ambiguity, doubt, or alternative interpretation necessarily means the statement is not "unambiguous." And when three judges of the United States Army Court of Criminal Appeals and two judges of this Court see Appellant's statement as being ambiguous, it is hard to fault the investigating agent for also viewing the statement as being ambiguous and then simply seeking clarification from Appellant about whether he wanted a lawyer or not.

When a suspect makes an ambiguous or equivocal statement, the *Davis* Court advised that it would be "good police practice" for interviewing officers to ask clarifying questions. *Id*. at 461. The investigating agent here did exactly that: she sought clarification about whether or not Appellant actually wanted an attorney. And Appellant's response to those questions provided that clarity: "I want to know what I'm here for, first." The Supreme Court has recognized that clarifying questions help prevent "judicial second-guessing as to the meaning of the suspect's statement

*United States v. Hurtado*, No. 25-0212/AR
Chief Judge OHLSON, with whom
Judge HARDY joins, dissenting

regarding counsel." *Id.* Here, we need not second-guess Appellant's ambiguous statement because the investigating agent followed "good police practice" and resolved the ambiguity for us.

Even had Appellant's statement somehow sufficed as an invocation, the majority misreads the law when it asserts that "any statements occurring thereafter do not affect the outcome" of their analysis because "the interview should have ceased." *Hurtado*, __ M.J. at __ n.2 (6 n.2). This Court has recognized that "[t]here is no blanket prohibition against a comment or a statement by a police officer after an invocation of rights. *Edwards*[ *v. Arizona*, 451 U.S. 477 (1981)] is designed to prevent the police from badgering a suspect." *United States v. Young*, 49 M.J. 265, 267 (C.A.A.F. 1998); *accord Edwards*, 451 U.S. at 484 (noting "when an accused has invoked his right to have counsel present . . . a valid waiver of that right cannot be established by showing *only* that he responded to further *police-initiated custodial interrogation*" (emphases added)).

In response to Appellant's ambiguous statement, the investigating agent in this case merely sought to clarify if Appellant wanted a lawyer. She then provided an anodyne—and correct—explanation of what would happen if Appellant did or did not invoke his right to counsel. The agent's explanation included no questions, was neutral and professional, and was not reasonably likely to elicit an incriminating response.[3] And importantly, the agent's questions about the underlying facts of the case only began after

---

[3] *See Hampton*, 675 F.3d at 728 ("Even if [the accused]'s statement 'Yeah, I do, but you . . .' was definite enough to constitute an unambiguous request for counsel . . . . the record reflects that what happened next was not an interrogation at all but an effort to clarify [his] intent."). *But see United States v. Hunter*, 708 F.3d 938, 947 (7th Cir. 2013) (noting a desire "to encourage officers to clarify whether a suspect wants an attorney, *but only if the suspect makes an ambiguous statement*" and finding the questioning following invocation was "reasonably likely to elicit an incriminating response" (internal quotation marks omitted)).

*United States v. Hurtado*, No. 25-0212/AR
Chief Judge OHLSON, with whom
Judge HARDY joins, dissenting

Appellant responded by indicating his desire to "know what I am here for, first."

The scenario presented here is not the evil which *Edwards* was designed to prevent. Rather, the "fundamental purpose" of *Edwards* is to "prevent[] police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Maryland v. Shatzer*, 559 U.S. 98, 106 (2010) (internal quotation marks omitted). There was no badgering here and the majority does not suggest otherwise. In fact, what occurred in the instant case lacks even the "subtle compulsion" found allowable in *Rhode Island v. Innis*.[4] Rather, as the military judge correctly recognized, the investigating agent was not coercive and did not overbear Appellant's will.

Consequently, even if Appellant did unambiguously invoke his right to counsel, he relinquished that right when he stated his desire to "know what I am here for, first," and then proceeded to talk about the facts of the case. *See Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) ("[T]he law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."); *Shatzer*, 559 U.S. at 108 ("Uncritical extension of *Edwards* to this situation would not significantly increase the number of genuinely coerced confessions excluded," but would "increase[] its costs: the in-fact voluntary confessions it excludes from trial, and the voluntary confessions it deters law enforcement officers from even trying to obtain.").

---

[4] 446 U.S. 291, 303 (1980). There, two officers transporting a suspect had a conversation between themselves "concerning [a] missing shotgun" used in the crime and their worry given a school for "handicapped children" was in the area. *Id.* at 294. The suspect "then interrupted the conversation, stating that the officers should turn the car around so he could show them where the gun was located." *Id.* at 295. The Supreme Court concluded that though "the officers' comments struck a responsive chord," this did not constitute "interrogation." *Id.* at 303.

*United States v. Hurtado*, No. 25-0212/AR
Chief Judge OHLSON, with whom
Judge HARDY joins, dissenting

Appellant made the choice to continue speaking with investigators and, regretting the consequences, now seeks another bite at the suppression apple. This Court obliges Appellant by granting relief without adequately addressing the legal issues which preclude his request.

In sum, the burden is on an accused to unambiguously invoke his or her right to counsel. Here, Appellant failed to do so. And even if he had, his subsequent action relinquished that right. Specifically, Appellant freely chose to continue his discussion with the investigating agent and provided voluntary statements that were incriminating. Despite this, he now gains suppression of these voluntary statements. Because this windfall is unwarranted, I respectfully dissent.